## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

Paris F. F.,                                          Case No. 22-cv-282 (TNL)

       Plaintiff,

v.                                                        **ORDER**

Kilolo Kijakazi,
Acting Commissioner of Social Security,

       Defendant.

---

Clifford Michael Farrell, Manring & Farrell, P.O. Box 15037, 167 North High Street, Columbus, OH 43215-0037; and Edward C. Olson, Reitan Law Office, 80 South Eighth Street, Suite 900, Minneapolis, MN 55402 (for Plaintiff); and

Ana H. Voss, Assistant United States Attorney, 300 South Fourth Street, Suite 600, Minneapolis, MN 55415; and James D. Sides and Chris Carillo, Special Assistant United States Attorneys, Social Security Administration, 6401 Security Boulevard, Baltimore, MD 21235 (for Defendant).

---

## I. INTRODUCTION

Plaintiff Paris F. F. brings the present case, contesting Defendant Commissioner of Social Security's denial of her application for supplemental security income ("SSI") under Title XVI of the Social Security Act, 42 U.S.C. § 1381 *et seq.*[1]  The parties have

---

[1] Plaintiff applied for both SSI and disability insurance benefits ("DIB") under Title II of the Social Security Act, 42 U.S.C. § 401 *et seq. See, e.g.,* Tr. 11.  The administrative law judge ("ALJ") found that Plaintiff "does not have a visual impairment that meets statutory blindness and therefore, . . . is not insured under the Title II program for statutory blindness." Tr. 12.  Because Plaintiff "does not have a visual impairment that meets the insured status requirements of the Social Security Act for statutory blindness through September 30, 2025," the ALJ concluded that Plaintiff "is not insured under the Title II program." Tr. 12.  Plaintiff has not challenged the ALJ's determination regarding her eligibility for DIB under Title II.

consented to a final judgment from the undersigned United States Magistrate Judge in accordance with 28 U.S.C. § 636(c), Fed. R. Civ. P. 73, and D. Minn. LR 72.1(c).

This matter is before the Court on the parties' cross motions for summary judgment. ECF Nos. 15, 18. Being duly advised of all the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that Plaintiff's Motion for Summary Judgment, ECF No. 15, is **GRANTED IN PART** and **DENIED IN PART**; the Commissioner's Motion for Summary Judgment, ECF No. 18, is **GRANTED IN PART** and **DENIED IN PART**; and this matter is **REMANDED** to the Commissioner pursuant to sentence four of 42 U.S.C. § 405(g) for further proceedings.

## II. PROCEDURAL HISTORY

Plaintiff applied for SSI asserting that she has been disabled since June 2019 due to, among other impairments, agoraphobia, depression, and anxiety.[2] Tr. 11, 212, 213, 229, 246. Plaintiff's application was denied initially and again upon reconsideration. Tr. 11, 212, 227, 229, 259.

Plaintiff appealed the reconsideration of her SSI determination by requesting a hearing before an ALJ. Tr. 11, 284-85. The ALJ held a hearing in December 2020, and issued an unfavorable decision. Tr. 11, 140, 142; *see generally* Tr. 140-72. Plaintiff requested review from the Appeals Council, which was denied. Tr. 1-7.

Plaintiff then filed the instant action, challenging the ALJ's decision. Compl., ECF No. 1. The parties have filed cross motions for summary judgment. ECF Nos. 15, 18.

---

[2] Plaintiff's assignments of error relate only to her mental impairments.

### III. ALJ'S DECISION

In relevant part, the ALJ found that Plaintiff had the severe impairments of generalized anxiety disorder, posttraumatic stress disorder, and major depressive disorder, and none of these impairments individually or in combination met or equaled a listed impairment in 20 C.F.R. pt. 404, subpt. P, app. 1.  Tr. 14-15.  As to Plaintiff's residual functional capacity, the ALJ concluded that Plaintiff had the residual functional capacity to perform

> a full range of work at all exertional levels but with the following nonexertional limitations: she is able to perform simple, routine and repetitive tasks but not at a production rate pace.  She is limited to simple work-related decisions. She can have occasional contact with supervisors, coworkers and the public.  She can only tolerate occasional changes in the work setting.

Tr. 16.  In reaching this conclusion, the ALJ found that the prior administrative medical findings of the state agency psychological consultants were "generally persuasive, supported by and consistent with the evidence."  Tr. 20.  The ALJ found that the opinion of Joyce Southers, MA, RN, CNP, one of Plaintiff's mental-health providers, was "unpersuasive, unsupported and inconsistent with the evidence."  Tr. 20.

Based on Plaintiff's age, education, work experience, and residual functional capacity as well as the testimony of a vocational expert, the ALJ found that Plaintiff was capable of performing her prior work as a laundry laborer and kitchen helper.  Tr. 21. The ALJ alternatively concluded that Plaintiff was capable of performing the representative jobs of cleaner, change-house attendant, and linen-room attendant. Accordingly, the ALJ concluded that Plaintiff was not under a disability.  Tr. 22.

# IV. ANALYSIS

## A. Legal Standard

This Court's "task is to determine whether the ALJ's decision complies with the relevant legal standards and is supported by substantial evidence in the record as a whole." *Lucus v. Saul*, 960 F.3d 1066, 1068 (8th Cir. 2020) (quotation omitted); *accord Kraus v. Saul*, 988 F.3d 1019, 1024 (8th Cir. 2021); *see also Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019). "Legal error may be an error of procedure, the use of erroneous legal standards, or an incorrect application of the law." *Lucus*, 960 F.3d at 1068 (quotation omitted).

"Under the substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains sufficient evidence to support the agency's factual determinations." *Biestek*, 139 S. Ct. at 1154 (quotation omitted). "[T]he threshold for such evidentiary sufficiency is not high." *Id.* "It means—and means only—such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (quotation omitted); *see, e.g.*, *Chismarich v. Berryhill*, 888 F.3d 978, 979 (8th Cir. 2018) (defining "substantial evidence as less than a preponderance but enough that a reasonable mind would find it adequate to support the conclusion" (quotation omitted)).

This standard requires the Court to "consider both evidence that detracts from the [ALJ's] decision and evidence that supports it." *Boettcher v. Astrue*, 652 F.3d 860, 863 (8th Cir. 2011); *see Grindley v. Kijakazi*, 9 F.4th 622, 627 (8th Cir. 2021). The ALJ's decision "will not [be] reverse[d] simply because some evidence supports a conclusion

4

other than that reached by the ALJ." *Boettcher*, 652 F.3d at 863; *accord Grindley*, 9 F.4th at 627; *Perks v. Astrue*, 687 F.3d 1086, 1091 (8th Cir. 2012). "The court must affirm the [ALJ's] decision if it is supported by substantial evidence on the record as a whole." *Chaney v. Colvin*, 812 F.3d 672, 676 (8th Cir. 2016) (quotation omitted). Thus, "[i]f, after reviewing the record, the court finds it is possible to draw two inconsistent positions from the evidence and one of those positions represents the ALJ's findings, the court must affirm the ALJ's decision." *Perks*, 687 F.3d at 1091 (quotation omitted); *accord Chaney*, 812 F.3d at 676; *see also Kraus*, 988 F.3d at 1024 ("This Court will disturb the ALJ's decision only if it falls outside the available zone of choice. An ALJ's decision is not outside the zone of choice simply because this Court might have reached a different conclusion had we been the initial finder of fact." (quotations and citations omitted)).

Disability benefits are available to individuals who are determined to be under a disability. 42 U.S.C. § 1381a; *accord* 20 C.F.R. § 416.901. An individual is considered to be disabled if she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 1382c(a)(3)(A); *see also* 20 C.F.R. § 416.905(a). This standard is met when a severe physical or mental impairment, or impairments, renders the individual unable to do her previous work or "any other kind of substantial gainful work which exists in the national economy" when taking into account her age,

education, and work experience. 42 U.S.C. § 1382c(a)(3)(B); *see also* 20 C.F.R. § 416.905(a).

Disability is determined according to a five-step, sequential evaluation process. 20 C.F.R. § 416.920(a)(4).

> To determine disability, the ALJ follows the familiar five-step process, considering whether: (1) the claimant was employed; (2) she was severely impaired; (3) her impairment was, or was comparable to, a listed impairment; (4) she could perform past relevant work; and if not, (5) whether she could perform any other kind of work.

*Halverson v. Astrue*, 600 F.3d 922, 929 (8th Cir. 2010). In general, the burden of proving the existence of disability lies with the claimant. 20 C.F.R. § 416.912(a).

Plaintiff's assignments of error both relate to the ALJ's consideration of opinion evidence when determining her residual functional capacity at step four.

**B. Medical Records**

During a routine health exam to establish care in mid-September 2019, Plaintiff's primary concern was "many issues" related to "anxiety over the years." Tr. 647. Plaintiff "denie[d] having any issues with depression right now." Tr. 647. Plaintiff was noted to be anxious, but otherwise her mental status was "grossly normal." Tr. 649. Plaintiff was prescribed a trial of buspirone.[3] Tr. 649. At a follow-up appointment one month later, Plaintiff was not taking buspirone and the treatment provider was "not sure if she will." Tr. 645.

---

[3] "Buspirone is used to treat anxiety disorders or in the short-term treatment of symptoms of anxiety." *Buspirone*, MedlinePlus, Nat'l Lib. of Med., Nat'l Institutes of Health, U.S. Dep't of Health & Human Servs., https://medlineplus.gov/druginfo/meds/a688005 html (last accessed Aug. 22, 2023).

At the end of September, Plaintiff was screened by Duane Dale, MSW, LICSW, in connection with possible mental-health services.  *See generally* Tr. 582-93.  Plaintiff reported that "her primary concerns are depression and anxiety symptom management where anxiety has a big impact on her and makes her life very difficult."  Tr. 582.  Plaintiff also reported a history of personal and family trauma and being "easily stressed."  Tr. 582; *see, e.g.*, Tr. 583.  Among other things, Plaintiff reported experiencing anxiety, excessive worrying, panic attacks, frequent nightmares, and depression.  Tr. 582.  Plaintiff rated her depressive symptoms at 7/10 and reported that they happened weekly.  Tr. 582.  Plaintiff rated her anxiety symptoms at 10/10 and reported that they happened every day.  Tr. 582.  Plaintiff reported that her symptoms interfered with her memory, concentration, and thinking, and she withdrew and isolated herself.  Tr. 583.  Plaintiff also reported experiencing difficulty in social settings.  Tr. 585.

Notes from a mental status examination indicate that Plaintiff was appropriately dressed with good grooming and hygiene.  Tr. 586.  Plaintiff's perception was within normal limits, but her judgement and insight were variable.  Tr. 586.  She was alert and oriented, and her "Mood/Affect" was noted to be "Anxious, Guarded."  Tr. 586.  Plaintiff's speech and behavior were appropriate.  Tr. 586.  While Plaintiff's thoughts were "[l]ucid, coherent, and linear," she also rambled.  Tr. 586.  Plaintiff's memory was noted to be within normal limits.  Tr. 586.

Plaintiff participated in a series of diagnostic assessments.  *See* Tr. 583-86.  Plaintiff's scores indicated severe depression and anxiety.  Tr. 589.  One of the

7

assessments indicated, among other things, "moderate problems getting dressed" and "severe problems . . . learning new tasks, concentrating on things for long periods, and dealing with people she does not know." Tr. 589. It was noted that Plaintiff "reports extreme problems with taking care of household responsibilities, joining community activities, being emotionally affected by health concerns, maintaining friendships, and day to day work." Tr. 589. Plaintiff was diagnosed with generalized anxiety disorder, posttraumatic stress disorder, and major depressive disorder. Tr. 589; *see* Tr. 590-91. It was recommended that Plaintiff receive psychiatric care, therapy, and adult rehabilitative mental-health services ("ARMHS").[4] Tr. 591-93.

Approximately one month later, at the end of November, Plaintiff met with Southers to establish care and for psychiatric treatment. Tr. 594-99. Among other things, Plaintiff reported chronic anxiety and always feeling like "something bad will happen." Tr. 595. When discussing her symptoms, Plaintiff reported that she "showers daily w/ support of PCA encouragement" and has fair concentration and focus, including the ability to "carry on conversations[ and] stay focused on TV shows she enjoys." Tr. 595; *see* Tr. 595 (enjoys watching art videos and YouTube, listing to music, and cooking).

Southers noted that Plaintiff was "clean and casually groomed." Tr. 596. Notes from a mental status examination reflect that Plaintiff was alert and oriented and her memory was "grossly intact." Tr. 597. Plaintiff's mood was anxious and her affect included nervous laughter throughout the assessment. Tr. 597. Plaintiff's speech as well

---

[4] ARMHS "is a range of services that helps an individual develop and enhance psychiatric stability, social competencies, personal and emotional adjustment, and independent living and community skills." *Adult Rehabilitative Mental Health Services*, Minn. Dep't of Human Servs., https://mn.gov/dhs/people-we-serve/people-with-disabilities/health-care/adult-mental-health/programs-services/armhs.jsp (last accessed Aug. 22, 2023).

her thought content and process were normal.  Tr. 597.  Plaintiff's insight and judgment were fair.  Tr. 597.  Southers prescribed prazosin[5] and therapy, and directed Plaintiff to follow up in two weeks.  Tr. 598.

When Plaintiff next saw Southers around the middle of December, she was still feeling anxious and fidgety.  Tr. 601; *see* Tr. 601 ("constant anxiety").  Plaintiff reported that her "PCA runs errands [with her] daily," which was "very helpful for her anxiety." Tr. 601.  Plaintiff was "showering most days," and reported "trouble focusing when out of [the] house" due to her anxiety.  Tr. 601.  Plaintiff's mental status examination was the same.  *Compare* Tr. 602-03 *with* Tr. 596-97.  Southers increased Plaintiff's prazosin dose.  Tr. 603.

Plaintiff was also approved for 5.5 hours of PCA services per day in mid-December.  *See generally* Tr. 571-81.  Plaintiff was noted to need assistance with socially unacceptable behaviors, including behavior management and redirection when she became anxious.  Tr. 575-76.  "Thoughts of embarrassing herself by saying inappropriate things" could "overwhelm [Plaintiff] to the point that she won't go in public."  Tr. 576. Plaintiff also needed assistance staying on task, including with grooming activities, and reminders to bathe and eat.  Tr. 569-70; *see* Tr. 577-78.

Plaintiff had six sessions of therapy with Dale between October 2019 and January 2020.  Tr. 611-16.  She met with Dale once per month in October, November, and December, and three times in January.  Tr. 611-16.  Their sessions largely revolved

---

[5] "Prazosin is used alone or in combination with other medications to treat high blood pressure."  *Prazosin*, MedlinePlus, Nat'l Lib. of Med., Nat'l Institutes of Health, U.S. Dep't of Health & Human Servs., https://medlineplus.gov/druginfo/meds/a682245 html (last accessed Aug. 22, 2023).

around Plaintiff's anxiety and "stressors from her past."  Tr. 613; *see* Tr. 611-16.  Brief mental status examinations were conducted at each of her sessions.  Plaintiff was consistently alert and oriented.  Tr. 611-16.  Her judgement ranged from variable to apprehensive and was once noted to be impulsive.  Tr. 611-16.  Plaintiff's insight was consistently variable.  Tr. 611-16.  Plaintiff's mood and affect ranged from "Appropriate, Anxious" to "Anxious, Guarded" to "Anxious" to "Anxious, Depressed Guarded" to "Anxious, Depressed."  Tr. 611-16.  During this time, Plaintiff was noted to be anxious by other medical providers. *See, e.g.*, Tr. 640, 644.

When Plaintiff saw Southers next in mid-January 2020, she was "in better spirits," talking more with her family, and planning a trip to Wisconsin for one week.  Tr. 607.  Plaintiff did, however, report having an "intense panic attack" the day before.  Tr. 607.  Southers' assessment of Plaintiff's mental status remained largely the same, except that her mood was now "ok, better I think" and her affect was euthymic.  Tr. 609.  Southers again increased Plaintiff's prazosin dose.  Tr. 609.

Plaintiff met with Southers again approximately one month later.  Tr. 712.  While Plaintiff reported concern with managing her medical appointments, she also felt "she is making gains in anxiety" and enjoyed therapy.  Tr. 712.  Southers noted that there were no reported issues with Plaintiff's hygiene, though Plaintiff reported "increased arousal" in connection with her posttraumatic stress disorder.  Tr. 712.  Southers also noted that Plaintiff reported being tangential with respect to her concentration and focus.  The findings of Southers' mental status examination were largely consistent with the findings the month prior. *Compare* Tr. 714 *with* Tr. 609.  Southers noted that Plaintiff had

"straightened [her] hair last night." Tr. 714. Plaintiff's mood was "ok, my nightmares are better" and her affect remained euthymic. Tr. 714. Southers directed Plaintiff to continue prazosin at the same dose and prescribed melatonin. Tr. 715.

Plaintiff did not see Southers again until the end of June. Tr. 718. Plaintiff reported feeling anxious and depressed. Tr. 718. She reported staying home due to COVID-19, civil unrest, and illness. Tr. 718. Plaintiff's boyfriend had also been hospitalized. Tr. 718. Plaintiff was not attending therapy. Tr. 718. Plaintiff and her boyfriend went grocery shopping together and she tried to go for walks in parks by herself or with someone else. Tr. 718. Plaintiff's anxiety was increased by her boyfriend's mother staying with them, but she was able to talk with his mother about it. Tr. 718. Plaintiff reported no issues with her hygiene and she still had a PCA. Tr. 718. Plaintiff also reported being "more focused today." Tr. 718. While Plaintiff had constant anxiety, she was not having panic attacks and had been using the techniques she learned in therapy. Tr. 719.

Although Southers documented Plaintiff's mood as "anxious, depressed, frustrated" on this visit, the other findings from Plaintiff's mental status examination remained the same, including her euthymic affect, with Southers noting that Plaintiff was "laughing appropriately at times." Tr. 720. Southers directed Plaintiff to restart prazosin, slowly increasing the dose to the previous level; continue with melatonin; begin taking buspirone; and resume therapy. Tr. 721.

When Plaintiff returned to see Southers in mid-September, Southers noted that Plaintiff had missed their last appointment. Tr. 724. Plaintiff was feeling more

emotional and hypervigilant with increased arousal and nightmares. Tr. 724. Plaintiff was also isolating. Tr. 724. Plaintiff reported that she was continuing to stay at home, except for grocery shopping. Tr. 724. Plaintiff had not resumed therapy or connected with her ARMHS worker. Tr. 724. Plaintiff spent time with her boyfriend, watched videos, and listened to music. Tr. 724. Plaintiff was able to visit her father for one week in August, which she enjoyed. Tr. 724. Plaintiff was considering attending church with her boyfriend and his family. Tr. 724.

There were no noted issues with Plaintiff's hygiene and she again reported feeling "more focused today." Tr. 724. With the exception of Plaintiff's mood, which was noted to be "anxious," the findings of Plaintiff's mental status examination remained the same as before. Tr. 726. Southers continued Plaintiff's prazosin at its current dose; increased the doses of both melatonin and buspirone; discussed use of over-the-counter lavender oil capsules; and directed Plaintiff to restart therapy. Tr. 727.

In November, Plaintiff's PCA services were reduced to 4 hours per day. *See generally* Tr. 773-86. It was noted that Plaintiff "did not keep her first appointment [for the reassessment] as she was distracted and forgot the appointment had been scheduled, which "show[ed she] can be easily distracted and has difficulty completing tasks." Tr. 782.

As part of a treatment program around the same time, Plaintiff participated in group therapy sessions. Tr. 793-96; *cf.* Tr. 755, 760, 762, 764 (anxiety leading to alcohol use). During her first session, Plaintiff "introduced herself and appeared to be comfortable in the group setting." Tr. 793. Plaintiff's anxiety, however, prevented her

12

from giving a urine sample that day, but she was able to do so the following day.  Tr. 793, 794.  Plaintiff was described as participating fully in each of the sessions.  Tr. 793-96.  During one of the sessions, Plaintiff "brought some tea that she made as a treat for the group."  Tr. 796.

### C. Opinion Evidence & Prior Administrative Medical Findings

#### 1. Southers

Southers completed a mental medical source statement.  *See generally* Tr. 674-677.  Southers noted that she began treating Plaintiff in November 2019; saw Plaintiff every one to three months; and last had contact with Plaintiff in September 2020.  Tr. 674.  Southers included posttraumatic stress disorder, anxiety, and depression among Plaintiff's diagnoses.  Tr. 674.  Southers described Plaintiff's prognosis as "limited," noting that she had "minimal improvements from medications."  Tr. 674.

Southers opined on Plaintiff's ability to perform a number of work activities.  Plaintiff had no or mild limitation in her abilities to remember locations and work-like procedures as well as maintain socially appropriate behavior, including neatness and cleanliness.  Tr. 675.  Plaintiff had moderate limitation in her abilities to understand, remember, and carry out short and simple instructions; make simple work-related decisions; interact appropriately with the public; ask simple questions or request assistance; respond appropriately to changes in the work setting; be aware of normal hazards and take precautions; and set realistic goals and make plans independently of others.  Tr. 675.  Plaintiff had marked limitation in her abilities to understand, remember, and carry out detailed instructions; maintain attention and concentration for more than

two hours at a time; perform activities within a schedule, including maintain regular attendance and being punctual within customary tolerances; sustain an ordinary routine without special supervision; work in coordination with or close proximity to others without being distracted by them; complete a normal workday and work week without interruptions from psychologically-based symptoms and performing at a consistent pace without an unreasonable number and length of rest periods; accept instructions and respond appropriately to criticism from supervisors; get along with coworkers or peers without distracting them or exhibiting behavioral extremes; travel in unfamiliar places or use public transportation; and tolerate normal levels of stress.  Tr. 675.  Southers wrote that Plaintiff "struggles to maintain structure, has difficulty with change and is easily distracted."  Tr. 675.  Southers additionally wrote that Plaintiff is "internally reactive to criticism [and] shuts down."  Tr. 675.

Southers opined that Plaintiff would need additional unscheduled breaks during the workday, stating that it "could be 0 to multiple for anxiety/panic."  Tr. 676.  Southers opined that Plaintiff would have good days and bad days and was likely to be absent from work more than three days per month.  Tr. 676.

### 2.  State Agency Psychological Consultants

In relevant part, with respect to Plaintiff's ability to interact socially, the state agency psychological consultants opined that Plaintiff's "ability to interact with co-workers and the public would be reduced, but adequate to handle brief, infrequent, and superficial contact."  Tr. 223; *accord* Tr. 254; *see* Tr. 223 ("can relate at least on a superficial basis on an ongoing basis with co-workers and supervisors"), Tr. 255 (same).

14

They further opined that Plaintiff's "ability to tolerate and respond appropriately to supervision would be reduced, but adequate to handle ordinary levels of supervision found in a customary work setting." Tr. 223; *accord* Tr. 254-55.

### D. Evaluation of Opinion Evidence & Prior Administrative Medical Findings

The evaluation of opinion evidence and prior administrative medical findings is governed by the criteria set forth in 20 C.F.R. § 416.920c. *See Austin v. Kijakazi*, 52 F.4th 723, 728 & n.2 (8th Cir. 2022) (noting "recently revised regulations" "apply to all claims filed on or after March 27, 2017"); *cf.* 20 C.F.R. § 416.927 (evaluating opinion evidence for claims filed before March 27, 2017). Under the regulation, medical opinions are not entitled to special deference. *Bowers v. Kijakazi*, 40 F.4th 872, 875 (8th Cir. 2022); *see* 20 C.F.R. § 416.920c(a) ("We will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from your medical sources.").

> Instead, ALJs evaluate the persuasiveness of medical opinions by considering (1) whether they are supported by objective medical evidence, (2) whether they are consistent with other medical sources, (3) the relationship that the source has with the claimant, (4) the source's specialization, and (5) any other relevant factors.

*Bowers*, 40 F.4th at 875; *accord Austin*, 52 F.4th at 728; *see generally* 20 C.F.R. § 416.920c(c) (listing factors).

"The first two factors—supportability and consistency—are the most important." *Bowers*, 40 F.4th at 875; *accord Austin*, 52 F.4th at 723; *see* 20 C.F.R. § 416.920c(a), (b)(2). With respect to supportability, "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or

her medical opinion(s) . . . , the more persuasive the medical opinions . . . will be."  20 C.F.R. § 416.920c(c)(1).  As for consistency, "[t]he more consistent a medical opinion(s) . . . is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) . . . will be."  20 C.F.R. § 416.920c(c)(2) (same).  The regulation provides that the ALJ "will explain how [he or she] considered the supportability and consistency factors for a medical source's opinions in [the] . . . decision."  20 C.F.R. § 416.920c(b)(2); *see, e.g.*, *Bonnett v. Kijakazi*, 859 F. App'x 19, 20 (8th Cir. 2021) (per curiam).  ALJs "may, *but are not required to*, explain how [they] considered" the other factors.  20 C.F.R. § 416.920c(b)(2) (emphasis added); *see Nolen v. Kijakazi*, 61 F.4th 575, 577 (8th Cir. 2023) ("Having considered the supportability and consistency of Dr. Diamond's opinion, the ALJ did not need to discuss other factors.").

### 1.  Persuasiveness of Southers' Opinion

Plaintiff asserts that the ALJ failed to comply with § 416.920c when considering the persuasiveness of Southers' opinion.  Plaintiff asserts that the ALJ "cursorily declared that . . . Southers' notes were not supportive of her marked limitations" and "ought to have acknowledged the support [Southers] provided" in "narrative answers before and after the checked-box limitations."  Pl.'s Mem. in Supp. at 14, ECF No. 16.  Plaintiff additionally asserts that the ALJ failed to provide "any meaningful or effective review of the consistency factor"; "cited to no evidence in support of" the ALJ's conclusion that "Southers' opinion was inconsistent with other mental health treatment and the record as a whole"; and "did not explain how . . . Southers' opinion was inconsistent with the other mental health treatment in the record because the ALJ cited to no actual medical

16

evidence" in support of this conclusion.  Pl.'s Mem. in Supp. at 15-16.  *But see* Pl.'s

Mem. in Supp. at 19 (acknowledging ALJ cited to some medical evidence).  Lastly,

Plaintiff asserts that the ALJ's explanation was inadequate.

After summarizing Southers' opinion, including recognition of the "'marked'

limitations [opined] in many areas of functioning," the ALJ concluded that Southers'

opinion was "unpersuasive, unsupported and inconsistent with the evidence."  Tr. 20.

The ALJ explained, in significant detail:

> NP Southers did not provide adequate support for "marked"
> limitations especially her exam findings in Exhibit B6F,
> which at times showed anxiety, a guarded appearance or
> rambling thoughts, but normal memory, orientation, speech
> and hygiene.  Likewise, recent exams showed her in "better
> spirits," having a "better" mood, and showing improved
> concentration and focus with treatment.  The larger medical
> evidence was also inconsistent with "marked" limitations.
> For example, provider records in Exhibit B8F showed an
> anxious affect, but grossly normal mental status findings
> especially noting a healthy and pleasant appearance.  Other
> times she complained of hypervigilance, hyperarousal[,]
> anxiety, and isolation, but she had improved focus, no
> memory loss and fair insight/judgment (Ex. B17F).  As late as
> November 2020, she appeared to be comfortable in a group
> setting and she participated in the full session (Ex. B21F).
> The evidence at the hearing level, especially her daily
> activities and recent exam findings, were inconsistent with
> marked limitations (i.e., laughing appropriately, brought tea
> to share with therapy group, improved focus, does light
> chores, enjoys spending time with boyfriend or watching
> YouTube) (Ex. B4E; B17F; B21F).

Tr. 20-21.

The ALJ's detailed explanation demonstrates that the ALJ thoroughly considered

the supportability and consistency factors as required under § 416.920c.  The ALJ did not

17

state that Southers provided no support for her opinion, but that the support provided was "not . . . adequate" to support the degree of limitation contained in the opinion.[6]  Southers herself stated that the opinion was based "on treatment from 9/2019," when she began seeing Plaintiff.  Tr. 676.  It is permissible for an ALJ to find a medical opinion less persuasive when it "is inconsistent with the physician's clinical treatment notes." *Davidson v. Astrue*, 578 F.3d 838, 843 (8th Cir. 2009); *see, e.g.*, *Nolen*, 61 F.4th at 577; *see also Galloway v. Kijakazi*, 46 F.4th 688, 690-91 (8th Cir. 2022); *cf. Hacker v. Barnhart*, 459 F.3d 934, 937 (8th Cir. 2006) ("A treating physician's own inconsistency may also undermine his opinion and diminish or eliminate the weight given his opinions.").  The ALJ's conclusion that the marked limitations contained in Southers' opinion were not supported by the findings of Southers' mental status examinations was well within the available zone of choice.  Similarly, as shown above, the ALJ plainly *did cite* to evidence in support of the conclusion that the marked limitations contained in Southers' opinion were not consistent with other evidence in the record, including the findings and observations of other treatment providers and Plaintiff's daily activities. That Plaintiff is able to point to some evidence in the record that supports a different conclusion than the one reached by the ALJ is not surprising, and the Court appreciates that Plaintiff "has a fundamentally different view" of the persuasiveness of Southers' opinion.  *Rhineheart v. Saul*, 776 F. App'x 915, 916 (8th Cir. 2019) (per curiam).

---

[6] According to the Commissioner, "in the space provided for . . . Southers to have explained the supporting evidence, she simple [sic] listed Plaintiff's subjective statements and did not reference any objective findings." Comm'r's Mem. in Supp. at 10, ECF No. 19.  Notably, that is not what the narrative question referred to by the Commissioner asked.  The question stated: "Please identify any documentation deficiencies where objective testing would further explain the patient's limitations."  Tr. 675.  It did not ask Southers to provide evidence in support of the limitations identified above it.

In the end, while Plaintiff may have desired the ALJ to conduct an even more detailed analysis of Southers' opinion, it cannot be said that the ALJ failed to comply with § 416.920c's requirement to articulate adequately and explain how the supportability and consistency factors were considered when evaluating the persuasiveness of this opinion.

### 2. Superficial Contact with Others

Plaintiff additionally asserts that, despite finding the prior administrative medical findings of the state agency psychological consultants to be generally persuasive, the ALJ "failed to articulate how the opined ability to interact with others *superficially* was accounted for or why it was omitted" from the residual functional capacity. Pl.'s Mem. in Supp. at 7 (emphasis added). Recognizing that the ALJ limited her to "occasional contact" with others, Plaintiff asserts that the terms "occasional" and "superficial" are not coterminous, and the absence of an explanation by the ALJ does not permit meaningful review of the residual-functional-capacity determination and consequently the hypotheticals posed to the vocational expert.

Recall that the state agency psychological consultants opined that Plaintiff's "ability to interact with co-workers and the public would be reduced, but adequate to handle brief, infrequent, and *superficial* contact." Tr. 223 (emphasis added); *accord* Tr. 254; *see* Tr. 223 ("can relate at least on a *superficial* basis on an ongoing basis with co-workers and supervisors" (emphasis added)), Tr. 255 (same). The ALJ found the prior administrative medical findings of the state agency psychological consultants to be "generally" though not entirely persuasive. Tr. 20. The ALJ explained that the prior

administrative medical findings were supported by the state agency psychological consultants' "review of the available evidence," "which included mental health and provider exam records," and "adequate explanation for their findings."  Tr. 20.  The ALJ further explained that "[t]he larger medical evidence was generally consistent with . . . [their] findings," pointing to "provider records showing anxious affect or social deficits but normal mentation findings" and "noting issues with focus, but fair insight/judgment, and often intact memory."  Tr. 20.  The ALJ additionally found that "evidence at the hearing level, especially statements by [Plaintiff] about her anxiety, depressed mood, inattention, and social issues" were "generally consistent" with the prior administrative medical findings.  In two respects, however, the ALJ found that Plaintiff had greater limitation.  The ALJ found that Plaintiff's "anxiety symptoms would reasonably distract her to the point where moderate concentration limits are more appropriate than the mild [limitation] found by" the state agency psychological consultants.  Tr. 20.  The ALJ also found that Plaintiff's "anxious mood, tendency to avoid others, hypervigilance, hyperarousal and other symptoms would reasonably interfere with concentration causing moderate rather than mild limitation."  Tr. 20.  Ultimately, the ALJ included a limitation for "occasional contact with supervisors, coworkers and the public" in the residual functional capacity.  Tr. 16.

For the reasons previously articulated in *Troy L. M. v. Kijakazi*, No. 21-cv-199 (TNL), the Court agrees that "the terms 'occasional' and superficial' are not coterminous."   2022 WL 4540107, at *13-14 (D. Minn. Sept. 28, 2022) (quotation omitted); *see also, e.g.*, *Sara R. v. Kijakazi*, No. 22-cv-1271 (KMM/TNL), 2023 WL

4564421, at *6 (D. Minn. June 28, 2023), *report and recommendation accepted*, 2023 WL 4561312 (D. Minn. July 17, 2023); *Ashley E. A. v. Kijakazi*, No. 22-cv-280 (WMW/TNL), 2023 WL 2283455, at *6 (D. Minn. Jan. 30, 2023), *report and recommendation adopted sub nom. Ashley A. v. Kijakazi*, No. 22-cv-280 (WMW/TNL), 2023 WL 2273153 (D. Minn. Feb. 28, 2023); *Kenneth J.V. v. Kijakazi*, No. 22-cv-373 (KMM/DJF), 2023 WL 2394397, at *10 (D. Minn. Jan. 27, 2023), *report and recommendation accepted*, 2023 WL 2388696 (D. Minn. Mar. 7, 2023).  "Occasional contact goes to the *quantity* of time spent with individuals"; "superficial contact . . . goes to the *quality* of the interactions."  *Troy L. M.*, 2022 WL 4540107, at *14 (quotations omitted).  "Even a job that requires only occasional interaction could require an employee to engage in prolonged or meaningful conversations during those few occasions."  *Sanders v. Astrue*, No. 11-cv-1356 (JNE/JJG), 2012 WL 1657922, at *12 (D. Minn. Apr. 17, 2012), *report and recommendation adopted as modified*, 2012 WL 1658988 (D. Minn. May 11, 2012).

The Commissioner contends that Plaintiff fails to look at the prior administrative medical findings "as a whole."  Comm'r's Mem. in Supp. at 6.  Notwithstanding the limitation to "superficial contact," the Commissioner points out that the state agency psychological consultants found that Plaintiff was not significantly limited in her ability to get along with coworkers and peers without distracting them or exhibiting behavioral extremes; not significantly limited in her ability to maintain socially appropriate behavior; and moderately limited in her ability to interact appropriately with the public.  *See, e.g.*, Tr. 223.  The Commissioner emphasizes that "the ALJ considered [the prior

administrative medical findings of the state agency psychological consultants] as 'generally persuasive' *not* totally or fully persuasive." Comm'r's Mem. in Supp. at 6 (citation omitted). The Commissioner contends that "[t]he ALJ had ample evidence demonstrating that Plaintiff functioned with others on more than a superficial basis," Comm'r's Mem. in Supp. at 6 n.4, and the ALJ "considered that the record as a whole indicated Plaintiff had more social interaction abilities, and demonstrated these abilities were greater than superficial throughout his decision," Comm'r's Mem. in Supp. at 6-7.

Regardless of whether the reasons proffered by the Commissioner might constitute valid bases upon which to find the prior administrative medical finding limiting Plaintiff to superficial contact to not be wholly persuasive, the problem for the Commissioner is that it is not apparent from the ALJ's decision that the superficial-contact limitation was among those prior administrative medical findings that the ALJ found not to be persuasive. Rather, it was the prior administrative findings regarding mild limitations in sustaining concentration and persistence that the ALJ found were not persuasive and greater limitation was in fact warranted based on the record. *See* Tr. 20; *contra* Tr. 222 ("[n]o more than mild limitations indicated" in ability to sustain concentration and persistence), 239 (same). The Court cannot accept the Commissioner's *post hac* rationalization. *See Oglala Sioux Tribe of Indians v. Andrus*, 603 F.2d 707, 715 n.7 (8th Cir. 1979) ("It is well established that an agency's action must be upheld, if at all, on the basis that was articulated by the agency itself, and that it cannot be sustained on the basis of post-hoc rationalizations of appellate counsel."). Likewise, it is not the role of this Court to speculate on the reasons that might have supported the ALJ's decision or supply

a reasoned basis for that decision that the ALJ never gave.  *Encino Motorcars, LLC v. Navarro*, 136 S. Ct. 2117, 2127 (2016); *accord Nebraska v. U.S. Envtl. Prot. Agency*, 812 F.3d 662, 666 (8th Cir. 2016); *see Bonnett*, 859 F. App'x at 20 ("While the Commissioner argues that Dr. Thompson's opinion was not consistent with specific other evidence in the record, we will not affirm on this basis, as the ALJ made no such findings."); *see also Nat'l R.R. Passenger Corp. v. Boston & Maine Corp.*, 503 U.S. 407, 420 (1992) ("We recognize the well-established rule that an agency's action may not be upheld on grounds other than those relied on by the agency." (citing *SEC v. Chenery Corp.*, 318 U.S. 80, 88 (1943))).

Ultimately, "[a]n ALJ's reasoning need only be clear enough to allow for appropriate judicial review." *Grindley*, 9 F.4th at 631 (quotation omitted).  But here, the ALJ's analysis was incomplete.  *See Draper v. Barnhart*, 425 F.3d 1127, 1130 (8th Cir. 2005) ("While a deficiency in opinion-writing is not a sufficient reason to set aside an ALJ's finding where the deficiency has no practical effect on the outcome of the case, inaccuracies, incomplete analyses, and unresolved conflicts of evidence can serve as a basis for remand." (quotation omitted)).  It is simply not clear from the ALJ's decision why, if the prior administrative medical findings of the state agency psychological consultants were "generally persuasive," Tr. 20, a limitation to superficial interactions with others was not included in the residual functional capacity, or, alternatively, if such a limitation was intended to be included, how a quantitative limitation sufficiently accounted for reduced functioning with respect to the type of interaction with others. *Troy L. M.*, 2022 WL 4540107, at *15-16; *see, e.g., Sara R.*, 2023 WL 4564421, at *7;

*Ashley E. A.*, 2023 WL 2283455, at *7-9; *Kenneth J.V.*, 2023 WL 2394397, at *8-9, 10-11.  And, as the ALJ relied on the testimony of a vocational expert in response to a hypothetical that did not include a limitation to superficial contact to conclude that Plaintiff was capable of performing her past relevant work, *see* 20 C.F.R. § 416.960(b)(2); Tr. 169, it may be that the testimony the ALJ relied on "at step five is based on a potentially flawed hypothetical."[7]  *Kenneth J.V.*, 2023 WL 2394397, at *11.

It is entirely possible that, based on the evidence in the record, the ALJ concluded that Plaintiff was not as limited in her ability to interact with others as reflected in the prior administrative medical findings and therefore did not think a limitation as to the type (superficial) of interaction was needed.  *Cf.* Tr. 15 (finding Plaintiff had "moderate limitation" in interacting with others).  It is also entirely possible that, having found the prior administrative medical findings of the state agency psychological consultants to be generally persuasive except as to Plaintiff's ability to sustain concentration and persistence, the ALJ intended the limitation to "occasional contact" with others in the residual functional capacity to accommodate both the quantity and superficial quality of those interactions.

With such clarification by the ALJ and testimony elicited from a vocational expert, it may even be that Plaintiff's past relevant work as a laundry laborer and kitchen helper or the alternative representative jobs of cleaner, change-house attendant, and linen-

---

[7] This case is thus distinguishable from *Jamie E. v. Kijakazi*, No. 22-cv-2393 (ECT/JFD), 2023 WL 5021807 (D. Minn. Aug. 7, 2023).  In *Jamie E.*, the ALJ included a limitation restricting the claimant to "occasional superficial contact with others" and "defined superficial as an occupation rated no lower than an 8 on the Selected Characteristics of Occupations' people rating."  2023 WL 5021807, at *2 (quotation omitted).  In doing so, the ALJ "describ[ed] how a vocational expert might incorporate the limitation into the expert's evaluation of whether jobs exist in the national economy that are consistent with [the claimant's] functional limitations."  *Id.*

room attendant remain available.  *See* Tr. 21-22 (making "alternative findings" at step five).  The *Dictionary of Occupational Titles* ("DOT") rates the degree to which these jobs require a person to function in relation to other people.  *See generally* DOT app. B (explanation of data, people, and things), *available at* https://occupationalinfo.org/appendxb_1.html.  The rating scale ranges from 0 to 8, with 8 being the lowest level of functioning required.  *Id.*  A people rating of 8 involves "taking instructions" and "helping," and requires "attending to the work assignment instructions or orders of [a] supervisor" with "[n]o immediate response required unless clarification of instructions or orders is needed."  *Id.*  Courts have found that a people rating of 8 is "compatible with limiting a claimant to only occasional contact with coworkers, supervisors, and the public."  *Allie v. Berryhill*, No. 4:16 CV 1353 JMB, 2017 WL 2572287, at *16 (E.D. Mo. June 14, 2017); *see, e.g.*, *Stephen D. v. Comm'r of Soc. Sec.*, No. 1:21-CV-00746, 2023 WL 4991918, at *19 (S.D. Ohio Aug. 4, 2023); *Bryant v. Kijakazi*, No. 2:22-2827-JTC-cgc, 2023 WL 4982261, at *4 (W.D. Tenn. Aug. 3, 2023); *cf. Flaherty v. Halter*, 182 F. Supp. 2d 824, 851 (D. Minn. 2001).  Each of the jobs identified by the ALJ carries a people rating of 8 and indicates that this is not a significant function.  DOT 361.687-018, 1991 WL 672992 (laundry laborer) ("People: 8 – Taking Instructions Helping N – Not Significant"); DOT 318.687-010, 1991 WL 672755 (kitchen helper) (same); DOT 381.687-018, 1991 WL 673258 (industrial cleaner) (same); DOT 358.687-010, 1991 WL 672957 (change-house attendant) (same); DOT 222.387-030, 1991 WL 672098 (linen-room attendant) (same).

In sum, remand is required to allow the ALJ to explain why he found the prior administrative medical findings of the state agency psychological consultants to be generally persuasive except as to Plaintiff's ability to sustain concentration and persistence but declined to include a limitation to superficial interactions with others or explain how the residual functional capacity accommodated this limitation.  *Troy L. M.*, 2022 WL 4540107, at \*16; *see, e.g.*, *Sara R.*, 2023 WL 4564421, at \*7-8; *Ashley E. A.*, 2023 WL 2283455, at \*7-9; *Kenneth J.V.*, 2023 WL 2394397, at \*10-11; *see also Christine F. v. Kijakazi*, No. 21-cv-2048 (NEB/LIB), 2022 WL 3648674, at \*4-5 & n.3 (D. Minn. July 27, 2022), *report and recommendation accepted*, 2022 WL 3647808 (D. Minn. Aug. 24, 2022).  On remand, the ALJ should feel free to adopt or reject the prior administrative medical finding of the state agency psychological consultants as to superficial contact with others; take additional testimony from a vocational expert, which could include but is not limited to a response to a hypothetical that incorporates a superficial-contact limitation; "or simply to explain whether, in his analysis, the . . . jobs previously identified at step five require only superficial contact."  *Kenneth J.V.*, 2023 WL 2394397, at \*11.

[Continued on next page.]

26

## V. ORDER

Based upon the record, memoranda, and the proceedings herein, and for the reasons stated above, **IT IS HEREBY ORDERED** that:

1. Plaintiff's Motion for Summary Judgment, ECF No. 15, is **GRANTED IN PART** and **DENIED IN PART**.

2. The Commissioner's Motion for Summary Judgment, ECF No. 18, is **GRANTED IN PART** and **DENIED IN PART**.

3. This matter is **REMANDED** to the Commissioner pursuant to sentence four of 42 U.S.C. § 405(g) for further proceedings.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

Dated: August  22 , 2023

*s/ Tony N. Leung*
Tony N. Leung
United States Magistrate Judge
District of Minnesota

*Paris F. F. v. Kijakazi*
Case No. 22-cv-282 (TNL)